David H. Shoup, Esq.
TINDALL BENNETT & SHOUP, P.C.
508 W 2nd Avenue, Third Floor
Anchorage, Alaska 99501
(907) 278-8533 Fax: (907) 278-8536
Shoup@tindall-law.com
Attorneys for Plaintiff

FILED in the TRIAL COURTS
STATE OF ALASKA, THIRD DISTRICT

SEP - 4 2018

By_____
Clerk of the Trial Courts
_____ Deputy

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| WILLIAM CURTIS, M.D. and PEDRO VALDES, M.D. | ) ) ) |
| Plaintiffs, | ) ) |
| -vs- | ) Case No. 3AN-18-_____ CI |
| PROVIDENCE HEALTH AND SERVICES | ) ) ) ) |
| Defendant. | ) ) |

**COMPLAINT**

COMES NOW William Curtis, M.D., and Pedro Valdes, M.D., and for their Complaint state and allege:

1. Plaintiff William Curtis, M.D., is a resident of Anchorage, Alaska.

2. Plaintiff Pedro Valdes, M.D., is a resident of Anchorage, Alaska.

3. Defendant Providence Health and Services ("Providence") is a Washington non-profit corporation whose principal place of business is Anchorage, Alaska. Providence operates Providence Alaska Medical Center in Anchorage ("PAMC") as well as hospitals in other Alaska locations.

4. This Court has jurisdiction of this matter pursuant to AS 22.10.020.

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536

1

Exhibit A, Page 1 of 17

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536

## Facts Pertinent to All Causes of Action

### A.     The Hospital Market.

5.  PAMC is the largest acute care hospital in Anchorage.  Although there are several ambulatory surgery centers in Anchorage, Alaska Regional Hospital (ARH) is PAMC's only hospital competitor within the Municipality of Anchorage.

6.  PAMC's revenues, patient head count and capacity make it the largest hospital in the Anchorage market.

7.  PAMC's revenues as of April 2018 were more than twice those of ARH ($2,127,745,252 for PAMC, $947,754,317 for ARH), a different of about 55 percent.

8.  PAMC has 379 staffed beds while AHR has 174, a difference of about 45 percent.

9.  PAMC's patient headcount annually is more than twice that of ARH.

10.  While PAMC and ARH receive patients from outlying communities as well as from Anchorage, PAMC has at least two-thirds of the Anchorage hospital market when measured by annual revenue, staffed beds and patient headcount.

### B.     PAMC's rules and bylaws.

11.  Dr. Valdes was granted medical staff privileges at PAMC in 1994.

12.  Dr. Curtis was granted medical staff privileges at PAMC in 2008.

13.  At the time Drs. Valdes and Curtis joined the PAMC medical staff, PAMC had no provision in its bylaws by which a physician could lose medical staff privileges due to a decision by PAMC that had nothing to do with the physician's conduct.

14.  Since they began performing cardiac and thoracic surgery at PAMC, both Dr.

2                                          Exhibit A, Page 2 of 17

Valdes and Dr. Curtis have been in the top tier of cardiothoracic surgeons nationally.

15. Since they were granted medical staff privileges, PAMC has not disciplined Dr. Valdes or Dr. Curtis in any way.

16. On Oct. 17, 2017, PAMC adopted a Medical Staff Credentials Policy, which states in part:

> From time to time, the Medical Center may enter into contracts or arrangements with practitioners and/or groups of practitioners for the performance of clinical and administrative services at the Medical Center.
>
> . . .
>
> To the extent that . . . any such contract or arrangement confers the exclusive right to perform specified services to . . . groups . . . no other practitioner except those authorized by or pursuant to the contract or arrangement may exercise clinical privileges to perform the specified services while the contract or resolution is in effect. [Medical Staff Credentials Policy, § 4.E(a)-(b).]

17. Medical Staff Credentials Policy, § 4.E(a)-(b) did not exist when Drs. Valdes and Curtis were given medical staff privileges. On information and belief, the policy came into effect for the first time in October 2017. By then, PAMC was negotiating with the Starr-Wood Cardiac Group of Portland, Oregon (Starr-Wood), which was seeking an exclusive contract with PAMC for cardiothoracic surgery.

18. Having been adopted after Dr. Valdes and Dr. Curtis obtained medical staff privileges at PAMC, credentials policy 4.E(a)-(b) does not form a part of their agreement with PAMC for medical staff privileges.

19. Consistent with 7 AAC § 12.110 (requiring acute care hospitals to have bylaws and rules), PAMC updated its Medical Staff Bylaws in October 2017. The bylaws contain a procedure for appointment and reappointment to the PAMC medical staff.

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536

[Medical Staff Bylaws, Article 7.]

20. The bylaws have a mechanism for suspension or revocation of medical staff privileges, but the procedure focuses on medical competence, safety and patient care, violation of ethical standards, and disruptive behavior. The bylaws are silent as to limitations on, or termination of, medical staff privileges for economic or administrative decisions made by the hospital.

C. **The exclusive contract.**

21. On August 29, 2016, PAMC chief executive Dick Mandsager, M.D., issued a memo stating that PAMC had recently completed a seven-month consultation with "an outside cardiothoracic (CT) surgeon who assessed all aspects of our program at PAMC."

22. The surgeon was Anthony "Tony" Furnary of Starr-Wood. At the time, Starr-Wood had two cardiothoracic surgeon owners, Furnary and Storm Floten. Both of them live in Oregon.

23. The memo stated that for 30 days in 2016, PAMC had no CT EMTALA coverage due to "an insufficient number of surgeons in Anchorage." The memo expressed a desire to enter into an exclusive contract with a single CT group to improve PAMC's CT surgery service efficiency, as well as "CT surgeon availability, patient outcomes, and patient, staff and referring physician satisfaction."

24. Due to a small number of CT surgeons with privileges at PAMC, Drs. Valdes and Curtis in September and October 2016 met with the PAMC administration and made a proposal that would allow them to hire a third CT surgeon from outside Alaska if PAMC

4

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536

would guarantee a salary for the third surgeon, making up any shortfall in revenue between collections and $1.5 million, if such a shortfall occurred. Providence did not accept the proposal.

25. On May 1, 2017, PAMC sent a Letter of Intent to Starr-Wood, stating that on or before Aug. 1, 2017, the parties would use their best efforts to negotiate a final agreement for CT services, and during the term set out in the letter they would **not** entertain proposals from any third party for such services.

26. Drs. Valdes and Curtis informed PAMC by letter that if negotiations with Starr-Wood were unsuccessful, Drs. Valdes and Curtis would be able to form a group that would be able to provide CT surgery coverage for PAMC.

27. Starr-Wood sought to affiliate with Drs. Valdes and Curtis, but the arrangement proposed by Starr-Wood would have made them subordinate to Starr-Wood and would have given Starr-Wood the power to exclude them from PAMC at any time. Drs. Valdes and Curtis rejected Starr-Wood's proposal.

28. On May 22, 2017, PAMC chief executive Bruce Lamoureaux wrote that he was disappointed to learn that Drs. Valdes and Curtis had not been able to reach mutually acceptable terms under which they would join with Starr-Wood. The letter stated: "[s]hould PAMC's negotiations with Starr-Wood or a Starr-Wood-affiliated entity end successfully, only surgeons affiliated with the contracting entity will have related privileges at PAMC."

29. On June 1, 2018, PAMC wrote to Drs. Curtis and Valdes that PAMC had entered into an exclusive agreement for CT services and notified them that their clinical

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536

5

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536

privileges to perform cardiac and thoracic surgery at the hospital would automatically terminate on the "CT Start Date" unless they became employees of NorthStarr Cardiothoracic Surgery, LLC, the Starr-Wood subsidiary designated to enter into the exclusive contract with Providence.

30. On the same day, June 6, Starr-Wood forwarded draft employment agreements to Drs. Valdes and Curtis. While the agreements contained a three-year term, NorthStarr Cardiothoracic Surgery would have the right to terminate the employment agreements at any time "for any reason or no reason . . .." For this as well as other reasons, Drs. Valdes and Curtis chose not to become NorthStarr employees.

31. PAMC has informed surgeons with cardiac and thoracic surgery privileges that due to the exclusive contract with Starr-Wood, such privileges will terminate as of Sept. 4, 2018.

32. The exclusive contract, entitled Professional and Program Management Services Agreement, provides that Starr-Wood and its wholly owned subsidiary, NorthStarr, would have the exclusive right to perform cardiac and thoracic surgery at PAMC for five years.

33. The exclusive contract provides for an annual collections guarantee by PAMC of $2,849,000 annually for **each** Starr-Wood physician and $554,000 for **each** Starr-Wood nurse practitioner and physician's assistant.

34. The exclusive contract also provides for up to $2,000,000 to be paid annually by PAMC to Starr-Wood or its contracting subsidiary for management services, and additional funds to be paid for call coverage.

6

Exhibit A, Page 6 of 17

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536

**D.    Previous contracts with Starr-Wood.**

35.    The exclusive contact is the second time PAMC has entered into an agreement with Starr-Wood for cardiac and thoracic surgery.

36.    In the 1990's, PAMC had a similar contract with Starr-Wood, and as a result patient care suffered and the contract was not extended.

37.    Under the earlier agreement, Starr-Wood employed some surgeons who had poor clinical outcomes and the arrangement drew complaints from patients and the Anchorage medical community.

38.    Under the earlier agreement, Starr-Wood received revenue from PAMC for surgical services, but it kept for itself substantial amounts of those revenues and did not pay the surgeons the amounts paid by PAMC for the surgeons' services.

39.    More recently, Starr-Wood entered into a contract with a hospital in Bend, Oregon. That contract was not renewed after the Bend hospital received numerous complaints about Starr-Wood.

**E.    The impact on patient care.**

40.    Under the Starr-Wood exclusive contract with PAMC, Starr-Wood plans to assign surgeons to work at PAMC who do not live in Alaska.  The plan is to have one or two surgeons in Anchorage at a time, and to rotate them in and out so that they will be able to live outside of Alaska.

41.    As a result, the Starr-Wood surgeons will be "itinerant surgeons" who will not be available to follow their surgical patients when the surgeons are out of town, and instead will pass them off to the next Starr-Wood surgeon. This practice will have an

adverse affect on the quality of patient care.

42. Due to the nature of the exclusive contract, if the Starr-Wood surgeon or surgeons in Anchorage become involved in complicated or time-consuming cases, there will be no other surgeon with medical staff privileges at PAMC to cover certain emergencies. This also will have an adverse impact on patient care.

43. Some of the surgeons Starr-Wood plans to assign to PAMC are relatively inexperienced and/or do not perform sufficient numbers of surgeries, either cardiac, thoracic, or both, to be able to treat PAMC's patients with the same degree of skill and expertise regularly employed by Dr. Valdes and Dr. Curtis. As a result, patient care will suffer.

44. For the past five years, Dr. Valdes has been ranked as the number one surgeon for coronary bypass procedures in the entire Providence system, which includes hospitals in Washington, Oregon, California and Montana, as well as in Alaska. None of the Starr-Wood surgeons who will be assigned to work in Anchorage has this level of proficiency either in coronary bypass or in other areas of cardiothoracic surgery.

45. Both Drs. Curtis and Valdes have been near the top of all cardiothoracic surgeons in the Providence system based on complications and patient outcomes. None of the Starr-Wood surgeons assigned to work in Anchorage under the exclusive contract has his level of proficiency.

46. The rates of mortality, infection, perioperative stroke and other complications related to surgery for both Dr. Curtis and Dr. Valdes are measurably better than those of the cardiothoracic surgery programs at other Providence hospitals of a similar size.

8

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536

47. There will be a significant impact on patient care as a result of the exclusive contract. Unfortunately, this impact will be negative.

48. The decline in the qualify of patient care brought about by the exclusive contract also is needless. PAMC could have solved its inability to provide cardiothoracic call coverage by agreeing to an income guarantee for one or two surgeons that would have been a fraction of the cost of the income guarantees contained in the exclusive agreement with Starr-Wood.

49. The exclusive contract has caused and will continue to cause economic harm to Drs. Valdes and Curtis, who after many years at PAMC will lose their ability to perform surgery there.

50. The exclusive contract also has harmed the Anchorage hospital market. The harm is to PAMC's patients, who are being required to select cardiac and thoracic surgeons less capable in certain areas than Drs. Valdes and Curtis. Such patients lack sufficient information to know of the difference in the levels of surgical expertise brought about by the exclusive contract, or will be persuaded to remain at PAMC due to agreements between their health insurers and PAMC, or both.

**First Cause of Action**
(Violation of Antitrust Laws)

51. Paragraphs 1-50 are incorporated by reference.

52. Alaska Stature 45.50.562 provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is unlawful."

53. Under AS 45.50.562 et seq. exclusive contracts most pass a "rule of reason"

9

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536

test to be lawful. Under AS 45.50.564, an attempt to monopolize also is unlawful. By entering into the exclusive contract with Starr-Wood, Providence has breached AS 45.50.562 et seq.

54. If found in violation of Alaska's antitrust laws, the defendant becomes liable for treble damages and reasonable attorney fees, and is subject to injunctive relief. AS 45.50.576(a)(1)-(2).

55. The exclusive contract with Starr-Wood does not pass the "rule of reason" test, and thus is unlawful.

56. The sole reason given by PAMC for the decision to withdraw the plaintiffs' medical staff privileges is the exclusive agreement between Providence and Starr-Wood. Because the exclusive contract is illegal, plaintiffs are entitled to an injunction reinstating their privileges at PAMC, to treble damages, and to reasonable attorney fees and costs.

### Second Cause of Action
(Breach of Contract)

57. Paragraphs 1-56 are incorporated by reference.

58. PAMC's extension of medical staff privileges to Drs. Valdes and Curtis, and their acceptance of them, formed a contract between Dr. Valdes and Providence, and between Dr. Curtis and Providence.

59. Providence breached these contracts by rescinding their medical staff privileges without just cause and by excluding Dr. Valdes and Dr. Curtis from the PAMC facilities where for many years they have performed cardiac and thoracic surgery.

60. In so doing, Providence breached its own bylaws and the agreements

10

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536

1 | between PAMC and Drs. Valdes and Curtis.

2 | 61. As a direct and proximate result, Drs. Valdes and Curtis are entitled to

3 | specific performance, requiring that their privileges be reinstated, and for damages

4 | flowing from the breach.

5 |

### Third Cause of Action
(Breach of the Implied Covenant of Good Faith and Fair Dealing)

62. Paragraphs 1-61 are incorporated by reference.

63. A covenant, or promise, of good faith and fair dealing is implied as a matter of law in all contracts in Alaska.

64. Through its exclusion of Drs. Curtis and Valdes from PAMC, Providence breached the covenant of good faith and fair dealing implied in their agreements with PAMC for medical staff privileges.

65. As a direct and proximate result, Drs. Valdes and Curtis are entitled to specific performance, requiring that their privileges be restored, and for damages flowing from the breach.

### Fourth Cause of Action
(Breach of AS 45..50.471 et seq.)

66. Paragraphs 1-65 are incorporated by reference.

67. The Alaska Unfair Trade Practices Act, AS 45.50.471 et seq., makes it unlawful to engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

68. Providence violated the statute by, among other things, stating the exclusive contract was needed to promote patient care, when it was not necessary for patient care

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536

11

and will cause the level of patient care at PAMC to decline. AS 45.50.471(b)(12).

69. Providence also violated the statute by engaging in an unfair method of competition, using its dominant position in the Anchorage hospital market to promote and grant hospital access to some cardiothoracic surgeons over others on a false claim of necessity. AS 45.50.471(b)(14).

70. As a direct and proximate result, Drs. Valdes and Curtis are entitled to injunctive relief reinstating their privileges and to an award of treble damages and reasonable attorney fees. AS 45.50.531(a), 45.50.537(a).

### Fifth Cause of Action
(Intentional Interference)

71. Paragraphs 1-70 are incorporated by reference.

72. By entering into the exclusive contract with Starr-Wood and excluding Drs. Valdes and Curtis, Providence intentionally interfered with prospective economic advantage by wrongfully eliminating their ability to continue treating patients at PAMC.

73. As a direct and proximate result, Providence is liable for damages relating to this loss.

WHEREFORE plaintiffs pray:

1. For injunctive relief, requiring Providence to reinstate their privileges.

2. For treble damages and common law damages.

3. For reasonable attorneys fees and costs, and for fees and costs pursuant to the Alaska civil rules.

4. For such further relief as the Court deems just and proper.

12

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536

DATED at Anchorage, Alaska this 4th day of September, 2018.

TINDALL BENNETT & SHOUP, P.C.
Attorneys for Plaintiffs

By: _____
David H. Shoup
Alaska Bar No. 8711106

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT _Anchorage_

_William Curtis, MD and_
_Pedro Valdes, MD,_
　　　　　　　　　Plaintiff(s),

vs.

_Providence Health and_
_Services,_
　　　　　　　　　Defendant(s).

CASE NO. _3AN-18-9069_ CI

**SUMMONS**
**AND**
**NOTICE TO BOTH PARTIES**
**OF JUDICIAL ASSIGNMENT**

To Defendant: _Providence Health and Services, C/o Registered Agent_

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at (address): _825 W. 4th Ave., Anchorage AK 99501_ within 20 days* after the day you receive this summons.

In addition, a copy of your answer must be sent to:

Plaintiff's attorney or plaintiff (if unrepresented): _David H. Shoup, Esq._
Address: _Tindall Bennett & Shoup, PC_
_508 W. 2nd Ave, 3rd FL, Anchorage, AK 99501_

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form *Notice of Change of Address / Telephone Number* (TF-955), available at the clerk's office or on the court system's website at www.state.ak.us/courts/forms.htm , to inform the court.

-OR-

If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

NOTICE OF JUDICIAL ASSIGNMENT

To: Plaintiff and Defendant

You are hereby given notice that this case has been assigned to Judge _Walker_.

(SEAL)

_9/4/2018_
Date

CLERK OF COURT

By: _____
Deputy Clerk

* The state or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

CIV-100 (2/08)(st.3)
SUMMONS

Civil Rules 4, 5, 12, 42(c), 55

Jon S. Dawson
DAVIS WRIGHT TREMAINE LLP
188 West Northern Lights Blvd., Suite 1100
Anchorage, AK 99503
Phone: (907) 257-5300
Fax: (907) 257-5399
jondawson@dwt.com

COPY
Original Received

SEP 2 6 2018

Clerk of the Trial Courts

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

WILLIAM CURTIS, M.D. and )
PEDRO VALDES, M.D., )
                  )
           Plaintiffs, )
                  )
v. )
                  )    Case No.: 3AN-18-09069CI
PROVIDENCE HEALTH AND SERVICES, )
                  )
           Defendant. )
_____ )

## ENTRY OF APPEARANCE

The law firm of Davis Wright Tremaine LLP hereby enters its appearance on

behalf of Providence Health and Services and requests that all future pleadings and

documents be served on the undersigned at 118 West Northern Lights Blvd., Suite 1100,

Anchorage, AK 99503.

DATED this ___ day of September, 2018.

DAVIS WRIGHT TREMAINE LLP
Attorneys for Providence Health & Services

Jon S. Dawson, ABA #8406022

Davis Wright Tremaine LLP
LAW OFFICES
188 West Northern Lights Blvd., Ste. 1100
Anchorage, Alaska 99503-3985
(907) 257-5300 · Fax: (907) 257-5399

4815-1294-0402v.1 0050033-000092

Exhibit A, Page 15 of 17

1    Certificate of Service

2    On the 26th day of September, 2018, a true and
correct copy of the foregoing document
was sent to the following parties by:

3

   ( ✕ ) First Class Mail
   (  ) Facsimile and Mail
4    (  ) Email and First Class Mail
   (  ) Hand Delivery

5

   David H. Shoup
   Tindall Bennett & Shoup, PC
6    508 W 2nd Ave., Third Floor
   Anchorage, AK 99501
   shoup@tindall-law.com
7

8    Janet Eastman

9

10

11

12

13

14

15

16

17

18

19

20

21

Davis Wright Tremaine LLP
LAW OFFICES
188 West Northern Lights Blvd., Ste. 1100
Anchorage, Alaska 99503-3985
(907) 257-5300 · Fax: (907) 257-5399

ENTRY OF APPEARANCE
*Curtis, et al., v. Providence Health & Services*
4815-1294-0402v.1 0050033-000092

Page 2 of 2
Case No.: 3AN-18-09069CI

Exhibit A, Page 16 of 17

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
## THIRD JUDICIAL DISTRICT AT ANCHORAGE

William Curtis MD et al

                Plaintiff(s),

vs.

Providence Health and Services

                Defendant(s)

CASE NO:  3AN-18-09069CI

**INITIAL PRETRIAL ORDER**

Pursuant to the Uniform Pretrial Order Administrative Order 3AO-03-04 (Amended), and Administrative Order 3AO-09-14, this Court hereby issues the Initial Pretrial Order in this case.

### Routine Pretrial Order

The parties shall discuss among themselves possible trial dates and the expected length of trial.  Within **15 days** after distribution of the Initial Pretrial Order, the parties shall jointly submit a list of three trial dates that are each approximately **12 months** from the date of the Initial Pretrial Order.  The submission to the Court should also state the approximate number of trial days the parties believe will be required.  A Routine Pretrial Order will be issued based on the parties' report in accordance with the Uniform Pretrial Order.

### Initial Disclosures

Unless an earlier date is or has been agreed to by the parties, initial disclosures required under Alaska Civil Rule 26(a)(1) shall be served not later than **30 days** after distribution of the Initial Pretrial Order.

### Alternative Dispute Resolution

Not later than **45 days** after distribution of the Initial Pretrial Order, each attorney will discuss with his or her client(s) the possibility of settling this case (or portions of the case) through mediation, conference, arbitration, or other alternative to litigation.  Not later than **60 days** from the date of this order, the parties or their attorneys shall meet to discuss whether some form of alternative dispute resolution can be agreed on.  Whenever practical, the parties are encouraged to meet in person instead of by phone.

_____10/1/2018_____
Effective Date

_____
Herman G. Walker, Jr.
Superior Court Judge

I certify that on ___10/1/2018___
a copy of this order was emailed to:
    Jon S Dawson
    David H Shoup

LGreene, Administrative Assistant

Exhibit A, Page 17 of 17

CIV208Anch(cv) (12/09)
Initial Pretrial Order - Anchorage